Maxwell *v.* Smith.

## MAXWELL *v.* SMITH.

### (*Jackson.* May 1st, 1888.)

1. ADMINISTRATION. *Distribution of personal assets on refunding bonds. Plene administravit.*

   Where an administrator, without notice of unpaid debts, distributes the personal assets among the next of kin, after the time has expired within which domestic creditors can sue the estate, and takes solvent refunding bonds and reports them to the County Court, he is exonerated from all liability for such assets, and will be protected, upon plea of *plene administravit*, against the claims of creditors. The refunding bonds stand in place of the assets and of the administrator's responsibility and bond.

   Code cited: §§ 3152, 3158, 3159 (M. & V.); §§ 2311, 2316, 2317 (T. & S.).

2. SAME. *Same. Sale of land to pay debts. Exhaustion of personalty.*

   Exhaustion of the personal assets of an estate "*in the payment of bona fide debts*" is a prerequisite to any decree for sale of lands descended to pay debts; and therefore personal funds paid over by the administrator to the next of kin upon *solvent refunding bonds*, as provided by law, are not *exhausted* within the meaning of the statutory requirement. The refunding bonds stand, as to creditors, in place of the assets, and to that extent protect the lands descended.

   Code cited: §§ 3105–6, 3158–9 (M. & V.); §§ 2267–8, 2316–17 (T. & S.).

3. SAME. *Same.* *Same.* *Same.* *Refunding bonds becoming worthless. Effect.*

The lands descended are exonerated, in such case, from the payment of debts, even though the refunding bonds are given by distributees who are likewise heirs, and subsequently become worthless.

Cases cited and approved: Peck *v.* Wheatón, M. & Y., 353; Bennett *v.* Caldwell, 8 Bax., 483.

*Quere.*—Is the result the same if next of kin who are heirs receive the personal funds without giving refunding bonds?

4. SAME. *Sale of land to pay debts. Actual application of personal assets not required.*

Where it clearly appears, by a proper reference and report, that the personal assets of an estate are insufficient for payment of debts, the Court may, without waiting for *actual application* of the personal fund, proceed to decree sale of lands to the extent of the deficit.

Case cited and approved: Doherty *v.* Boyd, 16 Lea, 192.

5. SAME. *Same. Effect of partition. Alienation of shares.*

Where lands descended are divided among the intestate's heirs, and some of the shares are aliened to *bona fide* purchasers before application is made to sell lands to pay debts of the estate, the unsold shares are liable not merely for their ratable proportion but for the entire indebtedness of the estate. The proper adjustment among the heirs is matter for separate suit.

Case cited and approved: Jordan *v.* Maney, 10 Lea, 146.

6. SAME. *Same. Decree for proceeds where heirs have sold the land.*

Where land descended has been sold by the heirs before suit is brought to sell it to pay debts of the intestate's estate, the Court may, upon proper pleadings, render personal decree against the heirs for such part of the proceeds received by them as may be required for payment of debts of the estate.

(See Code: §§ 2434–5, 3094 (M. & V.); §§ 1764–5, 2256 (T. & S.).

7. SAME. *Refunding bonds. Remedy on.*

Refunding bonds taken by an administrator from the next of kin, on distribution of personal assets, as provided by §§ 3158, 3159, (M. & V.) Code, inure exclusively to the benefit of creditors, stand in place of the personal assets distributed and of the administrator's responsibility and bond, and may be enforced by *scire facias* in County Court or by suit elsewhere on the bonds.

Code cited: §§ 3158, 3159 (M. & V.); §§ 2316, 2317 (T. & S.).

Maxwell *v.* Smith.

8. SAME.  *Effect upon co-obligor's estate, where refunding bonds are taken and prove insolvent.*

The exoneration of lands descended from debts of the ancestor, by reason of refunding bonds taken by the administrator from the next of kin for personal assets distributed, does not inure to the benefit of his co-obligor's estate so as to exonerate the lands of the latter's estate; and if the refunding bonds prove worthless, the creditor may hold the co-obligor's estate—real and personal—for his entire debt remaining *unpaid.*   *Exoneration* does not operate as *payment.*

9. CHANCERY PLEADING AND PRACTICE.  *Scire facias on refunding bonds. Insufficient allegations.*

The remedy by *scire facias* upon refunding bonds taken by an administrator for personal assets distributed is confined to the County Court, and cannot be granted upon a bill in the Chancery Court for sale of land to pay debts, to which the sureties on the bonds are not parties.

10. SAME.  *Allegation of bill as to amount.   Decree not excessive.*

Where a bill by a ward against his guardian for a general account avers that a balance of "about $2,500" was due from the guardian in 1881, and seeks recovery of that sum *with interest,* a decree rendered in 1887 for $3,273.35 is not in excess of the allegation.

11. SAME.  *Sale of lands.   Redemption.   Prayer of bill.*

Lands of a decedent sold under decree for payment of debts of the estate, are not subject to redemption, even though a sale in bar of that right is not prayed for in the bill.

Case cited and approved: Love *v.* Williams, 2 Lea, 226.

---

FROM OBION.

---

Appeal from the Chancery Court of Obion County.  H. J. LIVINGSTON, Ch.

F. W. MOORE for Maxwell.

W. G. SMITH and ENLOE & WELLS for Smith.

LURTON, J.   This is a bill filed by a minor ward
against his guardian, S. M. Howard, and the sure-
ties on his bond.   The bill seeks an account with
the guardian and his removal, alleging that he has
wasted the estate and failed to make true settle-
ments.   The bond of the guardian was made in
1868, and is in the sum of $8,000, with two sure-
ties—J. H. Meacham and J. J. Reeves.   Both of
these sureties are dead, and defendant, J. G. Smith,
is the administrator of Meacham and the executor
of Reeves, and this suit is against him in both
his official characters.   The heirs at law of Meacham
and the devisees and legatees under the will of
Reeves are made defendants.   The bill seeks to
subject lands descended or devised to the satisfac-
tion of any decree obtained against the personal
representatives of the two sureties, and which is
not satisfied out of the personal estate.

An account was stated by the Master with the
guardian, and confirmed by the Chancellor.   No
such clear mistake is pointed out by the appellants
as will justify us, under the well-settled rules of
this Court, in disturbing this decree.   *Turley* v.
*Turley*, 1 Pickle, 251.

The objection that the decree is for an amount
in excess of the amount of the liability stated in
the bill is not supported by the bill.   Two distinct
decrees are prayed for in the bill—one for the
amount supposed to be due from the guardian upon
his general account, and for which his general bond
is supposed to be liable, and a decree is likewise

Maxwell *v.* Smith.

sought for a special fund arising from sale of some lands in Henry County, and for which a special bond was given. The amended bill states the balance due from the guardian *in* 1881 to be "about $2,500," and this, *with interest*, is sought to be recovered upon his regular bond. The decree on this branch of the case is for $3,273.35, which includes interest up to date of decree in 1887.

It is obvious that this sum is not in excess of the allegation in the bill, which sought interest upon the supposed balance of $2,500. There was a decree against the personal representative of the estates of the two sureties, but the plea of fully administered was found in his favor as to both estates. There was a decree to sell certain lands which had descended to the heirs of the surety, Meacham. From this decree these heirs have appealed.

It is insisted that this decree to sell lands of the intestate, which have descended to his heirs, is erroneous, because the personal estate which came to the hands of the personal representative has not been exhaused in the payment of debts, but was paid over to the distributees, and that the personalty so paid to the distributees to that extent will exonerate the lands descended. After the payment of such debts as had been filed with the administrator, or brought to his notice, there remained several hundred dollars; and this fund, after the lapse of three years, was paid over to the distributees, refunding bonds being taken

with two good sureties, and these bonds were recorded in the County Court, as required by Code, §§ 2316 and 2317. Certain lands, owned by the intestate at his death, were subsequently, by decree of the County Court, duly portioned among his heirs, some seven or eight in number. The heirs among whom the lands were portioned were likewise the distributees, being children of intestate. Several of the heirs have aliened their shares in the divided real estate, and no effort is made to reach such alienated lands; the decree of the Chancellor, in so far as he refused relief against lands or shares alienated, not being appealed from. Several of the parcels, being the shares of some three or four of the heirs, were, however, as before stated, ordered sold for satisfation of complainant's decree.

The question for settlement is as to the validity of this decree in view of the facts concerning the personalty paid over to the heirs as distributees upon refunding bonds. The weight of English authority is, that the administrator cannot, ordinarily, exonerate himself from liability to a creditor of the intestate by showing that he had distributed the fund to the distributees, even though he had not notice of the creditor's debt. Lomax Executors, Vol. I., side-page 114, and authorities cited.

The administrator, in such case, had to protect himself by looking to the distributee, or to such bond as he had given. But in this State such

judgment would not be a devastavit after the lapse
of two years and six months, when there was
no notice of other debts, and refunding bond was
taken as required by § 2316.   See Code, § 2311,
requiring such distribution.   This refunding bond,
which the administrator may require, is for the
protection of creditors who shall subsequently es-
tablish their demands, by judgment, against the
administrator; and in such case, where the plea of
fully administered is found in favor of the admin-
istrator, a summary remedy upon the bond is pro-
vided which may be resorted to by the creditor.
Code, § 2318.

It is clear, therefore, that when the administra-
tor has, without notice of debts, paid over the
funds in his hands, after the time has expired
within which domestic creditors may bring suit,
and has taken solvent refunding bonds, and re-
ported them to the County Court, that he is ex-
onerated from liability as to such assets, and
that the plea of fully administered should be found
in his favor upon suit by a creditor.

But does it follow that the finding of fully ad-
ministered, in such a case, would alone entitle the
creditor to subject lands descended?  We think it
would not.

The bill in this case is filed under the Act of
1827.   Code, §§ 2267, 2268, 2269, and 2270.   This
act, in express terms, requires that before any de-
cree, ordering lands of an intestate to be sold,
shall be pronounced, that "it shall be made to

appear to the satisfaction of the Court that the personal estate has been *exhausted in the payment of bona fide debts.*"

Now, where the personal estate has been paid over to the distributees, as in the case under consideration, it obviously has not been " *exhausted in the payment of bona fide debts.*" This requirement that the personalty shall be shown to have been exhausted in payment of debts, upon which rests the remedy in equity against lands descended, is in entire harmony with the policy of the law as contained in the statutes giving relief at law. There could be no relief at law against the lands of the heir while the personalty remained unapplied in payment of debts. The loss of the assets by the administrator, and the insolvency of his sureties, furnishes no ground of relief against the heir, either in law or equity. Act of 1787, Code, § 2263; *Peck* v. *Wheaton*, Mart. & Yerg., 353; *Bennett* v. *Coldwell*, 8 Bax., 483.

We think that it clearly follows that the creditor cannot subject the lands descended, but must rely upon his remedy against the distributee or go upon the refunding bond, which stands in the place of the assets, and is given him in lieu of the responsibility of the administrator and his bond. Lands descended are exonerated to the extent of such personalty in the hands of the distributee, and this so whether the refunding bonds be now solvent or not. The heir is no more surety for the solvency of the distributee who received the person-

alty, or the continued solvency of his sureties upon the refunding bond, than he is for the solvency of the administrator. In the latter case it is clear the heirs', lands could not be reached because the administrator had wasted the assets, and his bond had proven worthless. In such case the loss is that of the creditor, and we see no distinction between the two cases. But can the heir, who has himself received the personalty, invoke the doctrine of the non-liability of the lands descended? This question has given us serious consideration. It seems never to have been settled in this State, though it must many times have arisen. It is not necessary to determine how this would be when no refunding bond has been given; but where, as in the case now under consideration, such bond has been given in strict compliance with the statute, there is no estoppel upon the heir. The insolvency of an administrator who had wasted the personalty would not, in law or equity, entitle the disappointed creditor to go upon the lands. Why shall the insolvency of the bond given by the distributee subject his land received as heir? It may be said that the insolvency of the administrator is something for which the heir is not responsible, and that this reason does not apply when he himself has received and wasted or refused to pay over the personalty. This is plausible, but it is not satisfactory. The heir in the first case does not escape responsibility by reason of his non-responsibility for the conduct or solv-

ency of the administrator; but in that case, as in the second, his lands are exonerated because lands are assets for the payment of the debts of the decedent only *sub modo*. Primarily, the personalty is the fund by law appropriated to payment of debts, and the express enactment of the statute which confers upon the Chancery Court jurisdiction to subject lands as assets, requires that such jurisdiction shall not be exercised unless it is shown, not that the personalty has been paid over to the distributee, or wasted, or otherwise placed beyond the reach of the creditor, but "exhausted in the payment of *bona fide* debts." So long as there is a fund in the hands of the administrator sufficient to pay the debts of the decedent, the lands of the heir stand exonerated. After the lapse of the time provided by law for the presentation of debts, the law requires the surplus of such personalty to be paid over to the distributees. If the distributee and heir be not the same, it is clear that the heir's land could not be reached because of such payment to the distributee, whether the latter gave bond or not. Nor would the solvency or insolvency of the distributee affect the question, as we have in the preceding part of this opinion determined. But the law, for the protection of the creditor who has not presented his claim within the two years and six months, and is not barred by reason of coming within some exception to the statute, requires that the administrator shall take from the

distributee a bond, with two good sureties, conditioned to pay his *pro rata* of any debt subsequently established. This bond is for the benefit of the creditor, and the remedy upon it is given alone to the creditor. This is the security which the law gives the creditor in place of the liability of the administrator. This bond stands in the place of the personalty, and this bond, with its "two able sureties," exonerates the land as completely as it was before exonerated while the fund was in the administrator's hands. The land of the heir is, of course, liable to the creditor of the heir, and the creditor of the decedent may become his creditor by showing that he has received personalty; and upon obtaining judgment or decree against him for the personalty so received, the land may be subjected to the satisfaction of such judgment, *but this will subject it as the land of the heir and not as the land of the decedent.*

This is an important distinction to observe. That in some cases this remedy against the heir may be fruitless by reason of an incumbrance which would not be valid as against a debt of the intestate, or by reason of dower or homestead rights which have accrued, is no sufficient reason for departing from the policy of the law which only suffers the lands of an intestate to be subjected when the personalty has been exhausted in the payment of debts.

It is next urged that, inasmuch as the lands descended were subsequently partitioned, and that

some of the shares have been sold to *bona fide*
purchasers, the shares of those unaliened can only
be subjected to their *pro rata* of the entire lia-
bility, and that each several share can only be
made liable for its ratable proportion. This is not
sound. The creditor need not regard the fact that
part of the lands descended has been aliened.
He is entitled to subject all of those remaining to
the satisfaction of his debt. As between the heirs
the burden should be borne ratably, and they are
entitled, as among themselves, to have the lands
marshaled, upon a bill filed for that purpose, if
they shall be so advised, as such marshaling would
not interfere with the right of the creditor to
subject the realty to the satisfaction of his debt.
*Jordan* v. *Mancy*, 10 Lea, 146.

Many of the same questions already disposed of
arise with reference to the liability of the estate
of the other surety, J. J. Reeves. A considerable
personal estate was paid over to the legatees by
the executor upon proper refunding bonds. The
personalty thus paid over exonerates the land to
that extent.

The complainant ignored all effort to reach the
personalty in the hands of the Meacham heirs,
upon the ground that the refunding bonds had
become insolvent, but was permitted by the Chan-
cellor to sue out writs of *scire facias* in the cause,
returnable to the next term, requiring the legatees
of Reeves and their sureties upon their several re-
funding bonds to show cause why judgments should

Maxwell *v.* Smith.

not be rendered upon such bonds. The remedy by *scire facias* upon motion of the creditor, is the remedy provided by statute to be pursued in the County Court where the bonds are of record. Code, § 2318.

That suit may be brought upon these bonds in the Chancery Court we have no doubt. But this bill is not framed for relief upon these bonds, and many of the sureties are not parties. The proper practice, we think, would be to require the filing of either an original or supplemental bill upon the footing of the decree against the executor, and the plea of fully administered found in his favor. The decree ordering writs of *scire facias* was, therefore, erroneous.

His Honor, the Chancellor, not deeming the lands exonerated by the refunding bonds, proceeded to decree a sale of realty; and it appearing that a part of the realty of the estate had been sold for division among the devisees, he likewise pronounced a decree against the devisees and the guardians of such as were minors for the amount of the proceeds of the sale. Both these decrees were erroneous as premature.

The personalty paid over to the legatees exonerated these lands, or the land fund, at least partially.

There is, of course, no objection to a decree for a sale of realty, devised or descended, before actual application of personalty to the extent it is available in exoneration of the lands, when it is

clearly made to appear that such personalty will be insufficient. *Doherty* v. *Boyd*, 16 Lea, 192.

But the insufficiency of the personalty to exonerate the lands was not ascertained by report of the Master or otherwise. If a sale of the realty of the Reeves estate shall prove to be necessary, and the devisees shall so desire, the store-house and lot will be first sold, as being less onerous upon the parties. If that is insufficient, there is no doubt of the power of the Court to render a decree against the devisees for the porceeds of the eighty-five acre tract heretofore sold for division.

A novel question arises as between the estates of the two sureties, growing out of the partial exoneration of the lands of each estate by reason of personalty for which bonds were given : To what extent does such exoneration of the lands of one estate affect the rights of the creditor as against the other estate? The exoneration of lands descended does not operate as a payment, and the creditor will have a right to collect from the other estate the part of his debt *not actually paid*. The second surety will reap no benefit from the partial or entire exoneration of the lands of the estate of the other security. This is the benefit flowing from the double surety upon the guardian's bond.

The next assignment of error is, that the Chancellor decreed a sale of lands free from equity of redemption, the bill not praying therefor. This is not error. If the lands were or shall

be sold, as the lands of the heir or devisee, to pay or satisfy a personal judgment against him, then it would be error. But they were decreed to be sold as the lands of the decedent, and to pay his debt. In such case the sale is free from right of redemption, whether so prayed or not. *Love* v. *Williams*, 2 Lea, 226.

The decree of the Chancellor will be modified, as herein indicated, and remanded for such further accounts, proceedings, and decrees as may be necessary upon the principles of this opinion. The costs of this appeal will be paid by appellee Maxwell.

Judge Caldwell did not participate in the consideration of this cause, being related to one of the litigants.