FRANKLIN *v.* FRANKLIN.

(*Nashville.*   January 14, 1892.)

1. COUNTY COURT.   *Is Court of general jurisdiction as regards administration.*

   Doctrine re-affirmed that the County Court is a Court of general jurisdiction as regards administration upon the estates of decedents; and that its proceedings had in administration cases are entitled to.the protection of those rules and presumptions that obtain in favor of the judgments of Courts of general jurisdiction.   (*Post, p. 128.*)

   Case cited and approved: Railway Co. *v.* Mahoney, 89 Tenn., 311.

2. ADMINISTRATOR.   *Appointment of voidable, not void, when.*

   Appointment of administrator by County Court, upon the estate of a decedent as an intestate, is not void on collateral attack, but only voidable upon direct attack, where the decedent was not in fact an intestate, and his will was subsequently discovered and probated. (*Post, pp. 126–132.*)

   Cases cited and approved: Pinkerton *v.* Walker, 3 Hay., 220; Baldwin *v.* Buford, 4 Yer., 20; Fay *v.* Reager, 2 Sneed, 200; Killebrew *v.* Murphy, 3 Heis., 551; Johnson *v.* Gaines, 1 Cold., 288; Railway Co. *v.* Mahoney, 89 Tenn., 311; 8 Cranch, 9; 14 Peters, 33.

   Cited and distinguished: Wilson *v.* Frazier, 2 Hum., 30; D'Arusment *v.* Jones, 4 Lea, 251.

3. STATUTE OF LIMITATIONS.   *Runs against decedents' estates, when.*

   And statutes of limitations run against such administrator upon all causes of action that had accrued to the decedent; and where such administrator is barred, the executor, subsequently appointed upon discovery and probate of the will, is also precluded by that bar. (*Post, pp. 125–132.*)

4. SAME.   *Ten years bars suit for legacy.*

Suit brought against an executor for recovery of a legacy more than ten years after final settlement of his accounts in the County Court is barred by the statute of limitations of ten years.   (*Post, p. 132.*)

Code: §3473 (M. & V.); §2776 (T. & S.).

5. SAME.   *Same.   When settlement is final.*

In 1877 the executor made full and final settlement of his accounts in the County Court, showing amounts due the legatees or distributees. In 1885 he collected a claim from the Federal Government due the estate, which had not been taken into account in the former settlement.   In regard to this latter sum he had made no settlement when he was sued as executor by the legatees in 1891.

*Held:* The settlement of 1877 was final in such sense that the statute of ten years began to run against legatees from its date, as to matters therein embraced, but not as to amount received by the executor in · 1885.   (*Post, pp. 122–125, 132.*)

*Quære:* Did suit, *quia timet*, brought by claimants under will to impound and preserve the estate pending contest over probate of will, operate to arrest the running of statutes of limitations against them?

Case cited: Brown *v.* Brown, 14 Lea, 259.

6. SAME.   *Six years bars suit for legacy, when.*

If an executor, after final settlement, appropriates the fund left in his hands to his own use, by some unequivocal act, upon the claim, made in good faith and under color, that he is the lawful legatee or distributee, then suit against him by the rightful legatee or distributee will be barred unless it is brought within six years after such appropriation of the fund by the executor.   The statutes of three and ten years do not apply in such case.   But this rule does not obtain in favor of an executor who has not made settlement or unequivocally appropriated the fund as distributee.   (*Post, pp. 122–125.*)

7. WILL.   *Example of class doctrine.*

Testator bequeathed to his brother, whom he nominated as his executor, his entire estate, including a legacy due testator from his uncle's estate.   Testator then added: "He [the brother] is to have the interest arising from a proper investment of the money from my uncle's estate to do with as he pleases, but the principal is to go to his children in case he has any.   In case he dies without heirs I want my sister   *   *   *   to have it on same conditions."

*Held:* The brother takes a life-time interest in the fund, and that upon his death his surviving children take the *corpus* as a class. (*Post, pp. 123–133, 134.*)

Cases cited and approved: Frierson *v.* Van Buren, 7 Yer., 606; Satterfield *v.* Mayes, 11 Hum., 58; Womack *v.* Smith, 11 Hum., 478; Bridgewater *v.* Gordon, 2 Sneed, 9.

## FROM SUMNER.

Appeal from the Chancery Court of Sumner County. Geo. E. Seay, Ch.

Chas. R. Head, James W. Blackmore, R. K. Gillespie, and T. C. Mulligan for Ed N. Franklin.

James J. Turner, S. F. Wilson, and B. D. Bell for J. W. Franklin.

Snodgrass, J. This is a suit to recover the interest of John Armfield Franklin in the estate of John Armfield, who died testate, in Grundy County, Tennessee, in 1871, leaving a large personal estate to five legatees—testator's wife and four others. The widow dissented from the will, and took her interest under the law upon dissent, so that only the remainder of the estate was left to pass under the will. The four legatees entitled to it were the present complainants, Ed N. Franklin, John Armfield Franklin, Mrs. A. Vanbibber,

and Mrs. B. Archer. One of these, John Arm-
field Franklin, died in November, 1871. Ed N.
Franklin was appointed and qualified as adminis-
trator of his estate December, 1876. John Arm-
field Franklin had, in fact, died testate, but his
will was not discovered for many years thereafter,
and not established, it being contested, until several
years later—facts to be more particularly stated
hereinafter.

The defendant, J. W. Franklin, was named as
executor in the will of John Armfield. He qual-
ified as such in the County Court of Grundy
County October 2, 1871, and made a settlement
of the estate with the Clerk of said Court July
30, 1875. In this settlement he was charged with
$27,342.99 and credited with $12,209.54, leaving
balance then in his hands of $15,133.45. On Sep-
tember 21, 1877, he made a final settlement, show-
ing balance in his hands from former settlement,
$15,133.45; collected since, $30,327.72; total, $45,-
461.77; credits since, $14,228.35; due distributees,
$ 1,232.82. Amount due the widow of this sum
was $10,410.94, leaving $20,821.88 to pass under
the will, or $5,205.22 to each of the three living
legatees, and the same amount to J. W. Franklin,
who was the father and distributee of the dead
one, John Armfield Franklin. This sum he kept
as such distributee and appropriated. The re-
mainder he paid to the parties already named en-
titled to it. All the parties acquiesced in the
settlement, and the present complainant gave his

receipt for balance in full due him under it December 24, 1877.

In January, 1885, Defendant J. W. Franklin, as executor of John Armfield, collected a claim of his testator's estate against the United States Government of $18,000, which, after deducting executor's compensation and attorney's fees paid for its collection, and paying the widow, left in his hands for distribution the sum of $1,890 for each living legatee and the distributee of John Armfield Franklin. He appropriated this $1,890 as such distributee, and he also applied the same amount due Ed N. Franklin on debts which he held against Ed N. Franklin. The other legatees he paid in full.

In the meanwhile, about the time of the collection and disposition of this fund, a will of John Armfield Franklin was found. This will, which we quote for the purpose of construction hereinafter, is as follows:

"WASHINGTON, GA., October, 1871.

"This is my last will and testament. I will and bequeath to my brother, Edward N. Franklin, my entire estate, including my interest in my Uncle John Armfield's estate, my shotgun, Winchester rifle, watch, gold-headed cane, and every thing that is mine. He is to have the interest arising from a proper investment of the money from my uncle's estate, to do with as he pleases, but the principal is to go to his children in case he has any. In case he dies without heirs, I

want my sister, Mrs. Adele Vanbibber, to have it on same conditions. I appoint my brother, Ed N. Franklin, to qualify as my administrator and act without bond. I want him to buy a ticket to Louisville, Ky., for Alice and give her $500.

"J. A. FRANKLIN."

It was offered for probate at the April term, 1885, of the County Court of Sumner County, was contested, and finally established as the will and ordered probated, and admitted to probate April 13, 1891, in the County Court, under decree of this Court pronounced March 6, 1891. When the will was admitted to probate Ed N. Franklin qualified as executor. On April 28, 1891, he procured an order of the County Court annulling and revoking his appointment as administrator of the estate of John Armfield Franklin, which had been made, as before recited, on December 23, 1876.

Before this will was admitted to probate, Ed N. Franklin, in his own name, and as next friend of his minor children, legatees under the discovered will, filed a bill *quia timet*, alleging facts of discovery and pending contest of the will of John Armfield Franklin, and seeking to bring the executor of John Armfield to a settlement. This bill was filed March 24, 1890.

After the will was admitted to probate, and on April 29, 1891, he filed an amended and supplemental bill as executor of said will, and as next friend of said minors, for same purpose—that is, to compel settlement by the executor, and to recover

the distributive share of John Armfield Franklin
in John Armfield's estate, which, as we have before
seen, had been received and appropriated by J. W.
Franklin as distributee of the estate of his deceased
and supposed intestate son.

The defense was the statute of limitations of
three, six, and ten years. By cross-bill defendant
also sought to have his own claims against Ed N.
Franklin set off against any recovery Ed N. might
show himself entitled to as legatee of John Arm-
field Franklin.

Whether the first bill *quia timet* can be con-
sidered as arresting from date of its filing the
statute of limitations, as intimated such a bill
might do in the case of *Brown* v. *Brown*, 14 Lea,
259, and thereby make it in time to save the bar
of the statute of six years, if J. W. Franklin
must be treated as having held the $1,890 as dis-
tributee and not as executor since it was received
in January, 1885, the Court deems it unnecessary
to decide, though it does decide that six and not
three years is the least time that could bar such
action. By the majority so determining, the Court
also holds that, sued as executor who had made
final settlement in 1877, but none as to the last
money of the estate received in January, 1885, the
only statute which could be applicable in his favor
was that of ten years. The question is whether
that can be relied on as to final settlement of 1877.
The Chancellor held it could not, and defendant
appealed.

The theory upon which it is now insisted by complainant that this statute did not run, is that the appointment of Ed N. Franklin as administrator of estate of John Armfield Franklin in 1876 was *void*, and that, therefore, there was no one capable of suing until the appointment and qualification of the executor in 1891.

The first appointment is assumed to be void because John Armfield Franklin did not die *intestate*, and it is insisted that the County Court therefore had no jurisdiction to appoint an administrator. If the contention be true that the appointment was void, then the statute did not run. If the appointment was valid—if only *voidable*—the statute did run; and this is the main question in the case. The appointment was not void. This question is not an open one in this State. *Pinkerton* v. *Walker*, 3 Haywood, 220; *Baldwin* v. *Buford*, 4 Yer., 20.

In England, at common law, the rule prevailed that an appointment of an administrator by the ordinary, made in derogation of the right of an executor qualified or acting with or without probate of the will (for there he could do almost all the acts incident to his office except some relating to suits before probate: 1 Williams on Executors, top paging 338–347, 6th Am. Ed.), or who had not renounced the trust, or from whom the will had been concealed (by party obtaining letter, as explained by Judge Freeman in dissenting opinion in *Brown* v. *Brown*, 14 Lea, 383) was void. See

Williams, on Executors, Vol. I., Book 6, Ch. 3, top page 655, 6th Am. Ed.

The rule was recognized at least to the full extent in case of an appointment where there were living executors appointed and qualified and capable of acting, in two cases in the Supreme Court of the United States. *Griffith* v. *Frazier*, 8 Cranch, 9 (Lawyers' Co-op. Ed., Book 3, p. 471); *Kane* v. *Paul*, 14 Peters, 33 (Lawyers' Co-op. Ed., Book 10, p. 341).

But in the former it was distinctly recognized as the rule that if a Court grant administration where there is an executor who has not qualified, its act, though erroneous, is valid until repealed (pages 25, 26), and the latter refers to this case as authority. Both are digested as deciding this principle by legitimate deduction in the Indexed Digest of Supreme Court Reports, Vol. I., p. 793.

·Here there is no cause for the application of the English doctrine of "concealment" if the entire rule on that subject prevailed in this State, because there was no. pretense that the will was concealed by defendant or any one else.

But in the 4 Yerger case already cited Judge Catron points out the distinction between the executor's right derived almost exclusively from the will under the English law, and his right under our law as affected by statute, and shows the English rule so founded not applicable here (pages 19, 20, 21). And the distinction is further elaborated in *Fay* v. *Reager*, 2 Sneed, 200, and *Kille-*

*brew* v. *Murphy*, 3 Heis., 551; the latter case probably going too far in assuming the existence of certain power in the executor in advance of qualification, though the power did exist in the same person as widow, and hence the case was on this point correct upon its facts.

Under our law the County Court is a Court of general and exclusive jurisdiction on the subject of administration; and when it makes an appointment of an administrator on the estate of a deceased resident of this State, the appointment is valid until revoked.

Residence in a given county, like intestacy, is made a requisite of the power to appoint, and it has been said an appointment made by the County Court of a county in which a deceased had no residence at time of death is *void.* *Wilson* v. *Frazier*, 2 Hum., 30.

But the term was inaccurately used for *voidable*, for the Court, in the very case in which it was used, held that it was only voidable, and that to adjudge it void there must be a contest in the Court where made; and this exact point was afterward decided in the case of *Johnson* v. *Gaines, Ex'r*, 1 Cold., 288, and again explicitly determined in the case of *Railroad Company* v. *Mahoney*, 5 Pickle, 311.

There it was said that the County Court was authorized to determine for itself the existence of the facts which authorized the appointment, and, having done so, the appointment was not void. Page 318.

It is true that in that case there was no question of intestacy, and the question was one of residence or inhabitancy, and the principle was not extended there beyond the case of an admitted intestate; but intestacy, like inhabitancy, is one of the facts the County Court must determine, and the two questions fall together within the power of the Court to settle when the appointment of an administrator is asked. When the appointment is made, both are adjudged, and that is conclusive until reversed or vacated. *Schluter* v. *Bank*, Lawyers' Reports, Annotated, Book 5, pages 513, 514, and authorities cited.

In the Schluter case, which was a well-considered one where many authorities were referred to in argument and by the Court, the Court said: " Our attention has been called to no case, and we are confident that none can be found, holding that the subsequent discovery of a will, and its admission to probate, renders the prior appointment of an administrator absolutely void, so as to give no protection to persons who in dealing with the administrator have acted on the faith thereof." Page 513, citing further Woerner on Administration, pages 568, 571, 588.

It would have been more nearly correct, if not absolutely so, to have said: " No modern case can be found so holding." See also 4 Ohio, 138; 58 Maine, 225; 31 Maine, 504.

Like intestacy, as we have seen, the question of residence has been treated as a jurisdictional

one, and there are cases cited in the books in which it has been held that finding it incorrectly by the Court authorized to make the appointment, rendered the appointment void. There were a number of these cases in Massachusetts. See cases collected in 1 Williams on Executors, top page 631, 6 Am. Ed., note *C.*

But the rule is now changed in that State by statute to meet the hardship involved in such a judicial view (*Ibid.*), and specially opinion in *Record* v. *Howard*, 58 Maine, 225.

The only apparent qualification of that doctrine (for it is not really so) is the appointment of an administrator on the estate of a living man, for this is universally held void, and that upon the ground that no Court is vested with such jurisdiction. *Railroad Company* v. *Maloney*, 5 Pickle, 319; *Moore* v. *Smith*, 73 Am. Dec., 122, and notes; 47 Am. Rep., 458, and notes; 107 Ill., 517.

Death is the one fact which must exist to give any Court jurisdiction. When it exists the others of residence and intestacy are open to proof. If decided erroneously the appointment may be voidable, but is not void. One Court went to the extent of holding that erroneous ascertainment of this fact did not make such an appointment void. But subsequently the same Court held that appointment void, it appearing that the Court in fact had not received evidence of it. *Roderigas* v. *East River Savings Institution*, 32 Am. Rep., 309 (*N. Y.*).

When the question first arose in this State, it was by a divided Court that it was settled adversely to the validity of such appointment where the fact of death was found incorrectly in the appointment. 4 Lea, 251. But it is obvious from that case that such fact was the only one the non-existence of which would render such appointment absolutely *void*.

To the same effect, as the question is now settled that the action of the County Court making the appointment is only voidable and not void, are the cases of *Varnell* v. *Loague*, 9 Lea, 158; *Posey* v. *Eaton*, 9 Lea, 504; *Brown* v. *Brown*, 14 Lea, 253; *State* v. *Anderson*, 16 Lea, 321.

There were three cases determined together in the last opinion. The facts of all are not given, but among the cases in which Anderson's appointment was held not void was one in which there was a will naming an executor. No distinction was taken as to the validity or invalidity of Anderson's appointment as administrator on this account, because, though the question was made, the Court held that none existed. Counsel cite other unreported cases to same effect.

We think no question is better settled in this State, and in the current of modern authority, or upon sounder reason. Wills may frequently be made and lie, as this, for years without discovery. The exercise of the jurisdiction of appointment of an administrator would be always unsafe and uncertain if the appointment was to be rendered

void *ab initio* by the discovery of a will. The evils attendant upon such a rule are far greater than can possibly result from the contrary holding. It were better that rights thus acquired should be settled by the statute of limitations than that parties should never acquire any in cases of administration, or never be sure that those supposed to have been acquired were in fact so.

The old English rule to the contrary was in 1857 changed there by statute 20 and 21 Victoria, Chapter 77, Section 75, cited in 1 Williams on Executors, 6th American Edition, pages 619, 632, 639. And so it is generally changed where it ever prevailed in the American States by effect of statutes making executor's power depend on Court appointment and qualification. 7 Am. & Eng. Ency. of Law, p. 193, and notes; 1 Williams on Executors, top page 347, and notes, 6th Am. Ed.

The settlement made in 1877 was final in the sense of the statute, notwithstanding years after another claim due the estate, not therein included, was collected by the executor; and suit to recover balance due in that settlement could not be sustained after ten years. As neither bill in this cause was filed within ten years of that date, no recovery can be had on that account. The money received in January, 1885, was within ten years of the filing of either bill, and recovery, therefore, can be had as to the $1,890 due as John Armfield Franklin's proportion of that fund.

The complainant will therefore, as executor of

John Armfield Franklin, recover this amount with interest from the date it came to the hands of defendant as executor of John Armfield. He will recover interest because there was nothing to prevent a payment of that fund at that time, as there was a party in existence capable of receiving it—the representative of John Armfield Franklin's estate.

After it is received, complainant, as legatee, has an interest, but what that interest is can only be ascertained after settlement of expenses of the estate incurred in litigation—it seems there are no debts or other charges against the estate. But it is obvious that large expenses have been incurred in establishing the will and prosecuting this cause, and it is only out of the net surplus that the legacy is to be settled. Of whatever this may be, complainant will be entitled to a life estate, and defendant to a set-off as to this, on account of his debts established as decreed by the Chancellor.

The corpus of the fund remaining after settlement of expenses and charges indicated, will, on the expiration of the life estate of Ed N. Franklin, belong to his surviving children, who take as a class under the will, the bequest being to a class of persons subject to fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time of payment or distribution of such fund being fixed at a subsequent period on the happening of a designated event, and the bequest being of an aggregate fund

given to the children as a unit and passing a joint interest.   7 Yer., 606; 11 Hum., 58, 478; 2 Sneed, 9.

The word "heirs" used in the will is manifestly used in the sense of children.

The cause will be remanded for an account to ascertain the amount, if any, which may be the subject of set-off in favor of defendant.

The costs of the cause accrued below will be paid two-thirds by defendant and one-third by complainant; that of this Court will be equally divided between them, both having appealed and assigned errors.   The amount charged to complainant may be paid out of the fund recovered to be administered.