Wright v. Eakin.

GEORGE J. WRIGHT *v.* MRS. ELIZABETH R. EAKIN *et al.*\*

## (*Nashville.* December Term, 1924.)

1. **DESCENT AND DISTRIBUTION.** Presumed deceased's fee-simple estate descended to his heirs, in absence of affirmative showing of devise thereof.

   It will be presumed deceased's fee-simple estate descended to his heirs, in absence of affirmative showing of devise thereof. (*Post,* p. 688.)

2. **DESCENT AND DISTRIBUTION.** Intestacy presumed until contrary is proved.

   In trying title of heir, intestacy is presumed until the contrary is proved. (*Post, p.* 688.)

Cases cited and approved: Baldwin v. Buford, 12 Tenn., 16; Franklin v. Franklin, 91 Tenn., 119; Neilson v. Weber, 107 Tenn., 161; Maxwell v. Smith, 86 Tenn., 539; Smith v. Thomas, 82 Tenn., 324; Gibson v. Jones, 81 Tenn., 684; Raht v. Meek, 89 Tenn., 274; Reeves v. Hagar, 101 Tenn., 712; State v. Lancaster, 119 Tenn., 638.

Case cited and distinguished: Pinkerton v. Walker et al., 4 Tenn., 221.

Codes cited and construed: Secs. 3985, 3989, 3153 (T.-S.).

3. **DESCENT AND DISTRIBUTION.** Title acquired by innocent purchaser from heir of testator, supposed to have died intestate, held to prevail over rights of claimants under belated will.

   Title acquired 11 years after testator's death by an innocent purchaser from the heir of such testator, who was supposed to have died intestate, *held* to prevail over the rights of remaindermen under a will later discovered and probated nineteen years after testator's death, in view of Thompson-Shannon Code, Sections 3153 et seq., 3985, 3989. (*Post, pp.* 688, 689.)

Cases cited and approved: Alsobrook v. Orr, 130 Tenn., 120; Reid v. Benge, 112 Ky., 810; Cooley v. Lee, 170 N. C., 18.

4. **CERTIORARI.** Writ will not be granted solely to review question of taxation of costs.

Writ of *certiorari* will not be granted solely to review question of taxation of costs. (*Post, p.* 690.)

Case cited and approved: State ex rel. v. Bush, 111 Tenn., 229.

---

*Headnotes 1. Discent and Distribution, 18 C. J., Section 2; 2. Discent and Distribution, 18 C. J., Section 2; 3. Descent and Distribution, 18 C. J., Section 175 (1926 Anno); 4. Certiorari, 11 C. J., Section 48 (1926 Anno).

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. JOHN R. AUST, Chancellor.

A. G. EWING, JR., and BAXTER CATO, for Wright.

BASS, BERRY & SIMS, for Mrs. Eakin.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Ann P. Trabue died in 1894, the owner of certain real estate in Nashville. She was supposed to be intestate, and left surviving her husband, Henry Trabue, and a

daughter, Ann Porterfield Trabue. Henry Trabue died March 27, 1902. Meanwhile Ann Porterfield Trabue had married one Robert Meeks. In 1905 Ann Porterfield Trabue and her husband, Robert Meeks, conveyed the real estate formerly owned by Ann P. Trabue to Lusky & Lowenheim for a valuable consideration. By mesne conveyances said land became the property of Mrs. Elizabeth R. Eakin, and on October 11, 1911, Mrs. Eakin conveyed said land to complainant George J. Wright by warranty deed for the sum of $1,300.

As heretofore stated, all parties supposed that Ann P. Trabue had died intestate. Many years after her mother's death, Ann Porterfield Trabue seems to have found a will executed by her mother March 9, 1891, duly witnessed. This will was discovered in a box at the Union Bank & Trust Company under circumstances that are not made clear on this record. By the will all the property of Ann P. Trabue was given to Ann Porterfield Trabue for life, and at her death "to the heirs of her body then living." It was further provided that, if Ann Porterfield Trabue died without leaving bodily heirs, the remainder should go to the heirs of the body of one Sam Mason. This will was probated by Ann Porterfield Trabue August 26, 1913. There were born to Ann Porterfield Trabue during her marriage to Robert Meeks two children, still minors. Robert Meeks died, and Ann Porterfield Trabue later became the wife of one Seymour, by whom, however, she has no children.

From the foregoing statements it will be noted that the will of Ann P. Trabue was not probated until nineteen years after her death; that eleven years after the

death of Ann P. Trabue, nothing having transpired to remove the presumption of intestacy, her heir at law conveyed the real estate involved to an innocent purchaser, and the present complainant became an innocent purchaser of said land seventeen years after the death of Ann P. Trabue, nothing still having transpired to remove the presumption of her intestacy.

This bill was filed by the complainant, Wright, setting out the probate of the will of Ann P. Trabue in 1913, and averring upon information that it was the intention of the Meeks children, upon the death of their mother Ann Porterfield Seymour, to bring suit to recover the remainder interest in said real estate devised to them by the will of their grandmother, Ann P. Trabue. The bill prayed that the complainant be decreed to hold said land as an innocent purchaser, free from the claims of said Meeks children, and that said claims be removed as a cloud upon his title, or, in the alternative, if the relief first prayed was not possible, that the complainant be decreed a recovery against Mrs. Eakin upon the covenants in his deed.

To this bill Mrs. Eakin, Ann Porterfield Seymour, her Meeks children, and the unknown heirs of the body of Sam Mason were made parties. A demurrer was interposed by Mrs. Eakin, a guardian *ad litem* was appointed, and filed a formal answer for the Meeks children, and a *pro confesso* was taken against Ann Porterfield Seymour and her husband and against the unknown heirs of the body of Sam Mason. Upon the hearing the chancellor sustained the demurrer of Mrs. Eakin, and later upon a further hearing dismissed the entire bill, without any

proof taken, and permitted the guardian *ad litem* to take an appeal.

The court of civil appeals affirmed the decree of the chancellor in all particulars, except that it held that the chancellor erroneously decreed against the Meeks children without proof taken. The case was accordingly remanded for proof before final decree as to them.

The case is here upon petition for *certiorari* of the guardian *ad litem* of the Meeks children, and upon petition for *certiorari* of complainant Wright. Wright questions the action of the court of civil appeals in taxing him with costs.

The serious question is the one presented by the petition of the guardian *ad litem*. Are the rights of an innocent purchaser from the heir of Ann P. Trabue superior to those of the remaindermen under her will, filed for probate after the land was acquired by an innocent purchaser?

In many of our cases, which it is not necessary to review, it is said that a will speaks for the death of the testator, although it be not probated until a much later date. In none of these cases, however, were the rights of an innocent purchaser, who bought from the heir between the death of the ancestor and the probate of the will, involved.

The exact question here presented appears not to have arisen previously in this jurisdiction. Analogy and principle, however, compel a conclusion in favor of the innocent purchaser under such circumstances.

In *Pinkerton* v. *Walker et al.*, 4 Tenn. (3 Hayw.), 221, an administrator was qualified under the supposition

that the deceased was intestate. The administrator sold the slaves of the deceased, and later it was found that deceased left a will, and this will was probated. A controversy arose between the purchasers of the slaves and those entitled to them under the will. This court said:

"As to those defendants who are vendees of the personal estate, or part of it, claimed by the plaintiffs, they ought to be protected; if letters of administration were granted by the county court of Wilson to the widow of Mitchel, . . . and if the purchases were made from her and her husband, after the date of them, all acts done under such letters between their date and the repeal and revocation of them are valid." *Pinkerson* v. *Walker et al.,* supra.

To the same effect was the decision of this court in *Baldwin* v. *Buford,* 12 Tenn., (4 Yerg.), 16.

This same question received elaborate consideration and the conclusion reached in the earlier cases just above cited was reaffirmed by the court in *Franklin* v. *Franklin,* 91 Tenn., 119, 18 S. W., 61. In this last case the court said that it had found no modern decision holding that the subsequent discovery of a will and its admission to probate rendered the prior appointment of an administrator void *ab initio* so as to deprive of protection persons who dealt with the administrator.

By section 3985, Thompson's-Shannon's Code, every debtor's property, except such as may be specially exempt by law, is declared to be assets for the satisfaction of all his just debts.

By section 3989, Thompson's-Shannon's Code, it is provided that, if an heir or devisee alien the land be-

fore action brought to subject it to the debts of deceased, the heir or devisee shall be answerable for the ancestor's debts to the value of the lands aliened.

Sections 3153 et seq., Thompson's-Shannon's Code, prohibit any devise of lands made in fraud of creditors.

While these sections of the Code render the land of a deceased liable for his debts, and forbid any devise of such land to the prejudice of his creditors, nevertheless our cases hold that the heir or devisee is so far the owner of the land that he is entitled to the rents and profits until the land is sold to pay the ancestor's debts, "and if, before any proceeding for that purpose is instituted, he sells the same to a *bona fide* purchaser, such purchaser gets a good title, and the creditor's remedy is against the heir or devisee, who is answerable for his proportionate share of such of the ancestor's indebtedness as the personalty was insufficient to pay to the value of the land so aliened." *Neilson* v. *Weber*, 107 Tenn., 161, 64 S. W., 20; *Maxwell* v. *Smith*, 86 Tenn., 539, 8 S. W., 340; *Smith* v. *Thomas*, 82 Tenn. (14 Lea), 324.

To the same effect is *Gibson* v. *Jones*, 81 Tenn. (13 Lea), 684, and *Raht* v. *Meek*, 89 Tenn., 274, 14 S. W., 777. These cases hold that the burden is on the heir's vendee to show the *bona fides* of his purchase, and that he had no knowledge of debts due by the ancestor that might be made a charge against his lands.

It has been furthermore declared that a title acquired by a purchaser in good faith under a will that has been duly admitted to probate will be protected, even though the will be afterwards set aside in proceedings instituted

for that purpose. *Reeves* v. *Hagar,* 101 Tenn., 712, 50 S. W., 760; *State* v. *Lancaster,* 119 Tenn., 638, 105 S. W., 858, 14 L. R. A. (N. S.), 991, 14 Ann. Cas., 953.

From the foregoing cases it appears that an innocent purchaser of personal property from the administrator of one supposed to have died intestate will be protected against those entitled to the personalty under a will subsequently found; that an innocent purchaser from an heir or devisee will be protected against creditors of the deceased who had not instituted proceedings to subject his land prior to the sale by the heir or devisee; and that an innocent purchaser of personalty or realty under a will duly admitted to probate will be protected against those entitled to said property after said will has been set aside.

We see no reason why the innocent purchaser of land from the heir of one supposed to have died intestate should not likewise be protected against those entitled to said land under a will appearing long after the heir had sold.

The rule is that—"If the estate of the deceased was a fee, the law presumes that it descended to the heirs at law of the deceased, unless a devise thereof is affirmatively shown. And in trying the title of an heir it is not necessary for him to show that his ancestor died intestate. The intestacy is presumed until the contrary is proved." 3 Washburn on Real Property, section 1857.

See, also, 18 C. J., 805.

The presumption being in favor of intestacy, and in favor of the heir at law, one dealing with the heir in

good faith under circumstances such as are here presented should be protected. We are clearly of opinion that the title acquired by the innocent purchaser from the heir of Ann P. Trabue must prevail over the rights of those claiming under this belated will.

We do not think the conclusion reached will tend to promote fraud. A corrupt heir, disappointed in his ancestor's will, would be tempted to destroy such instrument, not to suppress it for a time or delay its probate. We have no limitation upon the time in which a will may be probated. *Alsobrook* v. *Orr*, 130 Tenn., 120, 169 S. W., 1165, Ann. Cas., 1915B, 627.

To hold that a title, acquired by a *bona-fide* purchaser from the heir a reasonable time after his ancestor's death, no will of the ancestor having appeared, could be defeated by a will turning up and being admitted to probate years thereafter would be disturbing and contrary to familiar and longsettled policies of the law.

We are aware that a conclusion contrary to the one announced appears to have been reached by the Kentucky court of appeals in *Reid* v. *Benge,* 112 Ky., 810, 66 S. W., 997, 57 L. R. A., 253, 99 Am. St. Rep., 334, and by the supreme court of North Carolina in *Cooley* v. *Lee,* 170 N. C., 18, 86 S. E., 720. The Kentucky case rests on a statute to some extent, and in the North Carolina case no consideration seems to have been given to the question of the rights of an innocent purchased. We would not be able to follow these cases without reaching a conclusion out of harmony with our own cases herein referred to.

It results that the petition of the guardian *ad litem* for writ of *certiorari* is denied. Likewise the petition of Wright is denied, for the writ of *certiorari* will not be granted merely to review a question of the taxation of costs, *State ex rel.* v. *Bush,* 111 Tenn., 229, 208 S. W., 607.