FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MEMPHIS, TENNESSEE, *v.* ANN CAROL DEARTH *et al.*

(*Jackson,* April Term, 1955.)

Opinion filed May 6, 1955.

McDONALD, KUHN, McDONALD and CRENSHAW, and JOHN A. OSOINACH, all of Memphis, for petitioner-appellant.

J. M. REGAN, Solicitor and guardian ad litem, and CANADA, RUSSELL, TURNER & ALEXANDER, all of Memphis, for respondents-appellants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The sole determinative issue on this appeal is whether or not the First Federal Savings and Loan Association, as mortgagee, is entitled to foreclose its mortgage contrary to the rights and interests of the minor defendants,

who claim to be vested remaindermen in fee simple under the will of their deceased grandmother. The father and mother of the defendants were the grantors in the aforesaid deed of trust.

The Chancellor decided this issue in favor of First Federal. The minor defendants appealed to the Court of Appeals, and that court reversed the Chancellor's decree.

We granted the petition for certiorari, and the issue has been orally argued by counsel for the petitioner and the guardian ad litem for the defendants.

The contest between the petitioner and the defendants arose by reason of the following undisputed facts, as recited in the Court of Appeals' opinion.

Mrs. Pauline Dearth died in Memphis, Shelby County, Tennessee, on December 24, 1951, the owner of a house and lot located at 1617 Foster Avenue, in the City of Memphis. It was thought by her son, and only heir at law then surviving, that she died intestate. He had two minor children, Ann Carol Dearth and Cynthia Jane Burr Dearth. Mrs. Pauline Dearth died testate, but her will, which was found in the lockbox of James O. Farrar, father of Granville Farrar, an attorney of the Memphis Bar, was not produced until some time in August, 1952, and was not probated until May 29, 1953, prior to which date there had been no administration of her estate. By the terms of this will the testatrix devised to her son, Cooper Dearth, a life estate in "all her property of every kind and character, real, personal, or mixed, and wheresoever situated" with remainder "to my two grand-children, Ann Carol Dearth and Cynthia Jane Burr Dearth, share and share alike in fee simple, forever." Cooper Dearth was named executor without requirement to make bond. The will was dated May 8, 1950.

On March 22, 1952, Cooper Dearth, using his full name, "Andrew Cooper Dearth", and his wife, Rubye Mae Dearth, applied to the First Federal Savings and Loan Association of Memphis, Tennessee, who will be referred to later as First Federal, for a loan on the house and lot situated at 1617 Foster Avenue in the City of Memphis, and which was owned by Mrs. Pauline Dearth at her death, in the sum of $3,000. The source of title shown in the application is "Inherited December 1951", also that the applicants "had two children, ages twelve and six years". This application was approved on the 2nd day of April, 1952, by the executive committee of the bank, the same being signed by J. H. Weir, Secretary. A note, evidencing the said loan, was dated April 1, 1952, and provided for monthly installment payments, acceleration of payments, and of maturity on default, payment of taxes and insurance. This note was signed only by Andrew Cooper Dearth. The deed of trust, conveying the property to J. Herbert Weir, Trustee, was dated April 1, 1952, and signed by Andrew Cooper Dearth and his wife Rubye Mae Dearth and acknowledged by each on April 8, 1952. It was duly recorded in the register's office of Shelby County.

On April 4, 1952, an "Affidavit of Heirship" was made, signed and sworn to by Cooper Dearth, in which he states that he is the only child and heir-at-law of his mother, Pauline C. Dearth, and that she died intestate on December 24, 1951; that his father died many years before his mother.

"On the same day, Granville Farrar executed an affidavit properly sworn to in which it is stated that he is a distant relative of Pauline C. Dearth and had known her for more than forty years; that she died

intestate, a resident of Shelby County, leaving an estate valued at less that $10,000; that she left only one child, a son, Cooper Dearth, who is the next of kin and heir-at-law of said Pauline C. Dearth, and other facts apparently necessary to show the chain of title.

"On April 8, 1952 a check was drawn payable to Andrew Cooper Dearth by said Association, on the Union Planters National Bank & Trust Co., Memphis, Tennessee, in the amount of $2777.50, representing the net proceeds of said loan, which net amount is shown by an undated 'Loan Settlement Sheet' the items of expense shown thereby being, abstract $27.-50, title examination $30; survey $10, appraisal $15, credit report $2, filing fee, transfer tax etc. $8.15, interest to 4-30-52, $9.45, taxes-Escrow $27.20, insurance—C. R. Weir Co. $21, 1951 city tax and penalty $38.52, 1951 county tax and penalty $33.68, and taking the total of those items from the $3000 leaves the amount of the aforesaid check. This loan settlement sheet is signed by Andrew Cooper Dearth and Rubye Mae Dearth."

Default was made in the payment of the monthly installments beginning April 1, 1953. Cooper Dearth died May 19, 1953.

Two days after his death, or on May 21, 1953, Mr. Granville Farrar informed First Federal that Cooper Dearth had died and that subsequent to the execution of the aforesaid deed of trust, it was discovered that Mrs. Pauline C. Dearth had died testate and that Cooper Dearth was devised only a life estate with remainder in fee to his two children.

On July 2, 1953, First Federal filed its original bill in

this cause, reciting all of the foregoing facts, together with averments that following the application for the loan, and approval by its executive committee, and prior to closing the loan, abstracts of title to the property were submitted to its attorneys along with the affidavits of Cooper Dearth and Granville Farrar, attorney, etc., that it was advised that the trust deed would constitute a valid first lien on said real estate; that complainant (petitioner here) had no reason to doubt the validity of the said trust deed until informed by Mr. Granville Farrar of Mrs. Pauline C. Dearth's will being produced and later probated. It was further averred that all parties acted in good faith when the trust deed was executed and the loan completed.

The prayer of the bill was for a decree to the effect that the said deed of trust was a valid first mortgage lien on the property and that the title in the Trustee be held superior to the title of the minor defendants; that the property be sold for the purpose of enforcing the terms of the said deed of trust, etc. The bill also prayed for the appointment of a guardian ad litem to answer and defend on behalf of the minor children. Ann Carol Dearth, aged 14 years, filed a separate answer, and she with her sister, Cynthia Jane Burr Dearth, filed a formal answer by their guardian ad litem.

At the conclusion of the trial the Chancellor announced his opinion, holding that the complainant First Federal was entitled to have its debt paid out of the proceeds of the sale of the property, citing and relying entirely upon *Wright* v. *Eakin,* 151 Tenn. 681, 270 S. W. 992. The learned Chancellor, who is now sitting as a member of the Court of Appeals, but who did not participate in its decision, held that the facts in the case at bar, being

similar in all respects to *Wright* v. *Eakin,* supra, it was imperative that he decide the issues in favor of the petitioner.

The Court of Appeals, speaking through Presiding Judge Avery, expressed a different view, holding *Wright* v. *Eakin* did not control the case, distinguishing it factually from the case at bar, and hence required a contrary legal conclusion.

The assignments of error, separately and collectively, complain that the Court of Appeals erred (1) in reversing the decree of the Chancellor because ''petitioner was in the position of a bona fide purchaser'' and should prevail as against the remaindermen under a subsequently discovered will of their grandmother; that the Court of Appeals erred in distinguishing the case at bar from *Wright* v. *Eakin,* supra.

The determinative question is whether or not the First Federal should be adjudged a ''bona fide purchaser'' at the time the deed of trust was executed, and hence its title was valid as against the grandchildren of Mrs. Pauline C. Dearth, who were named in her will as devisees of an estate in remainder upon the death of their father, Cooper Dearth. The deed of trust was executed and accepted by First Federal only 3 months and 8 days after the death of the testatrix. The will was discovered and produced by Mr. Farrar. 8 months after her death. This is an admitted fact, and it should be further noted that the validity of the will is not questioned.

In contradiction of petitioner's insistence that it is a bona fide purchaser in good faith, the guardian ad litem for respondents say the deed of trust is invalid to defeat their remainder interest in that their father, Cooper Dearth, the life tenant, ''could not mortgage more than

he had''; that the First Federal was not a bona fide purchaser.

We are here confronted with the all important question of how long after the death of a person, who supposedly has died intestate, may his lawful heir convey title to his inheritance and by so doing defeat the interest of a beneficiary under a will subsequently discovered and offered for probate.

There is no statute of limitations in this State limiting the time in which a will must be probated after the death of the testator. We know of no decision fixing such a limitation, and we dare not presume to do so. As heretofore noted the trust deed was executed and accepted 3 months and 8 days after the death of the testatrix.

In *Wright* v. *Eakin,* supra, the testatrix, Ann P. Trabue, died in 1894 supposedly intestate, the owner of real property in Nashville and leaving as her survivors her husband, Henry Trabue, and one daughter, Ann Porterfield Trabue. Henry Trabue died in 1902. Ann married one Robert Meeks. In 1905 Ann and her husband conveyed the real estate involved to Lusky & Lowenheim for a valuable consideration. Later the property was conveyed to Mrs. Eakin, and on October 11, 1911, George Wright became the owner under a warranty deed.

"By the will all the property of Ann P. Trabue was given to Ann Porterfield Trabue for life, and at her death 'to the heirs of her body then living.' It was further provided that, if Ann Porterfield Trabue died without leaving bodily heirs, the remainder should go to the heirs of the body of one Sam Mason. This will was probated by Ann Porterfield Trabue August 26, 1913. There were born to Ann Porterfield Trabue during her marriage to Robert Meeks two children,

still minors. Robert Meeks died, and Ann Porterfield Trabue later became the wife of one Seymour, by whom, however, she has no children.''

The will of Ann P. Trabue was not probated until 19 years after her death; 11 years after the death of Ann, nothing having transpired to remove the presumption of intestacy, her heir-at-law conveyed the property involved to an innnocent puchaser. It thus appears from a careful review of the record that the facts of the instant case differ from the facts as pointed out in *Wright* v. *Eakin.*

The reasons given by Chief Justice Green for holding that the title to land of an innocent purchaser for value should prevail over the devisee of a will *appearing long after the heir had sold* are stated in the opinion. It was said [151 Tenn. 681, 270 S. W. 994]: ''The presumption being in favor of intestacy, and in favor of the heir at law, one dealing with the heir in good faith under circumstances such as are here presented should be protected.'' The ''circumstances'' were that the devisees were claiming title under a *''belated''* will, one that was probated 19 years after the testatrix' death. As further indicating the basis of the Court's final conclusion, we quote the following:

''To hold that a title, acquired by a *bona fide* purchaser from the heir a reasonable time after his ancestor's death, no will of the ancestor having appeared, could be defeated by a will turning up and being admitted to probate years thereafter would be disturbing and contrary to familiar and long-settled policies of the law.''

A careful examination of this opinion by the Chief Justice leads us to conclude the doctrine of adverse possession influenced his decision though not definitely so stated.

■ The petitioner's counsel concede on the brief that "the test is whether or not the purchaser acquired his title a *reasonable time* after the death of the ancestor under the circumstances of the particular case." It is insisted that "a sufficient time for surviving relatives, and the decedent's attorney, to make a careful search for a will is a reasonable time." It results that the issue now before us is whether or not 3 months and 8 days from the day the testatrix died until the trust deed was executed and accepted is a reasonable time to make a search for a will of the deceased. But we cannot accept this statement as a proper rule in all cases. It could never be considered as a rule of property. We think every case should be governed by its own facts; and much depends upon the *bona fides* of the search, not only by relatives but prospective purchasers as well.

In the case of *Wright* v. *Eakin,* supra, there was a delay of 19 years before any will was offered for probate. In the meantime the property had passed by deed from the heir through several purchasers until Wright became the owner under a warranty deed. The first conveyance by the heir of the testatrix, Ann P. Trabue, was 11 years after her death. Whereas in the instant case only 3 months and 8 days had elapsed from the death of the testatrix until the trust deed was executed. When we come to consider the efforts by the heir, Cooper Dearth, and First Federal we find that there was little if any effort made to find a will. The Court of Appeals found, and correctly observed, that "The Association apparently relied wholly upon the affidavits of Cooper Dearth and Mr. Granville Farrar" that Mrs. Pauline C. Dearth had died intestate.

The testimony of Mr. Oppenheimer, who handled this loan as complainant's officer and agent, is as follows:

"Q. At the time of the report of the examination was received, did that show any investigation at all in the neighborhood as to whether or not Cooper Dearth's mother had left a will? A. No sir.

"Q. In other words, you were relying wholly on the affidavit of Cooper Dearth and Granville Farrar? A. That is correct.

"Q. Did Mrs. Dearth give you any affidavit as to kinship and title? A. No, sir."

Now, in these circumstances, can it be said that the First Federal is an innocent purchaser for value, and that its title is superior to the minor children's estate in remainder? We think not, because the petitioner has not carried the burden of showing the *bona fides* of acquiring title to the property from the supposed heir. *Gibson* v. *Jones,* 81 Tenn. 684; and *Raht* v. *Meek,* 89 Tenn. 274, 14 S. W. 777.

The longer the time elapsing from the date of the immediate ancestor's death until the heir conveys his inheritance the greater the presumption of intestacy, and the *bona fides* of the sale is likewise strengthened when a "belated" will is offered for probate by one who claims the property as a beneficiary under its provisions. This was the crux of the case in *Wright* v. *Eakin,* supra, in that every presumption favored the heir and his vendees as against the rights of those who claimed under the will. The situation in the instant case is entirely reversed.

The petitioner's counsel has taken the Court of Appeals to task for what is claimed to be error for holding that a duty devolved upon petitioner to exercise reasonable diligence in making inquiry as to whether or not Mrs. Pauline C. Dearth had left a will disposing of her property. We see nothing alarming in the Court's holding

in this regard. It is not unreasonable that a lender of money, or a purchaser of property, should be diligent in protecting his interest, that is, to make diligent inquiry as to the ownership of property offered as security. The law does not throw its protecting arms around those who are admittedly able to protect themselves.

The evidence on behalf of the petitioner shows little if any effort to find out if Mrs. Pauline C. Dearth died intestate. While Mr. Oppenheimer, who was solely responsible for closing this loan, refers to a letter from petitioner's attorneys regarding title and instructions regarding the loan, this letter was not offered in evidence. But regardless of this fact he stated that he made his decision solely upon the affidavits of Cooper Dearth and Mr. Farrar. Moreover the application for the loan shows on its face a lack of prudence in approving the loan. The grantors in the deed of trust agreed in writing (see application, exhibit to the bill) to furnish a "Title Guarantee Certificate" at their own expense, if required. No demand was ever made for this additional security and it remains unexplained in the record. If there was ever a need for such a policy, guaranteeing title, it was this case to indemnify petitioner against the claims of devisees under any subsequent will.

Finally we do not wish to be understood as announcing a rule contrary to *Wright* v. *Eakin,* supra, but feel that it is clearly distinguishable from the case at bar, and the Court of Appeals' decree should be affirmed. The cause is remanded for fixing the fee of the guardian ad litem and such other orders and decrees as may be deemed appropriate.

SWEPSTON, Justice, did not participate in the consideration or decision of this case.