On Application for Rehearing.
Watkins, J.
This is a suit on two promissory notes of six hundred dollars each which bear date August 28, 1890, and went to their maturity on the 28th of August, 1893, and 1894, respectively; same being the third and fourth of the series of ten notes which William M. Wooten subscribed to represent the purchase price of a tract of land, and upon which the vendor retained a lien and mortgage to secure their payment.
The object of this suit is to recover a personal judgment against the two defendants in solido for the amount of the two notes, and the recognition of the vendor’s lien and mortgage upon the land purchased by them.
The averment of the petition is, that on the 12th of January, 1893, the original vendee, Wooten, sold the mortgaged property to the defendants for a specified sum in cash, and their assumption in the act of sale of nine of said series of ten notes, as well as all of his obligations to his vendor, Alexander W. Weems; and that, since said sale and assumption, said defendants had paid the first one of the said nine notes, the payment of which they had assumed; that is, the one falling due on the 28th of August, 1891 — an 1 have defaulted in the payment of the next two, which form the basis of the present action.
*1266 The defendants tendered, in the lower court, an exception that the plaintiff had no power or authority conferred upon him by law to qualify or act as executor of the succession of Weems, and consequently, no capacity to institute'this suit and stand in judgment ; and same having been overruled their answer was that they incurred no personal responsibility or obligation for the payment of the notes to Weems, the vendor and payee, or to his executor, and for that reason can not be sued and held personally bound for same.
Or, in other words, that they may be proceeded against by hypothecary action, but not by ordinary process or personal action.
On the trial this contention was rejected and judgment was rendered against the defendants, and same was affirmed by the unani - mous opinion of this court.
The propositions therefore which are presented for consideration on this appplication are: (1) Whether a judgment in this suit on the aforesaid notes would protect the defendants against further pursuit thereon by the creditors and heirs of Weems; (2) whether Weems, for whose benefit the assumption was made, had consented to avail himself of that advantage.
I.
On the exception, we cited a number of recent decisions of this court to the effect that the appointment of an executor can not' be attacked collaterally; that it can only be done by a direct action; that whether legally or illegally made, the appointment of an executor must be treated as lawfully made, until same has been judicially examined and annulled; that unless the appointment of an executor or administrator is absolutely void, acts done under it in such capacity are legal and binding; and it is elementary that mere illegality in the appointment of a fiduciary or public officer will not vitiate acts done under it. This is the universally accepted theory of interpretation. If parties litigant could at any time, as matter of exception or defence, raise the question of the simple illegality or relative nullity of an administrator’s appointment and traverse that issue by proof, the settlement of the successions would become practically interminable.
Certainly a litigant has no interest in that question, as he would be perfectly protected by the judgment pronounced.
On the contrary, he would have an interest in excepting to, *1267 the appointment as being an absolute nullity. There is no question of that. That was precisely the theory entertained in Grevenberg vs. Bradford, 44 An. 400, to which counsel has referred us in his application for rehearing, and in which we quoted Duson, Curator, vs. Dupré, 32 An. 896, and Simmons vs. Saul, 138 United States, 441, which are based upon the same hypothesis.
This rule obtains in other jurisdictions as well as in our own, as will be seen from an instructive opinion by the Tennessee court, Franklin vs. Franklin, 18 S. W. Rep. 61, in which it was held that if a court appoint an administrator upon insufficient evidence of the residence of the deceased “the appointment may be voidable, but it is not void.”
Counsel cites the ease of Moise, Tutor, vs. Life Association, 45 An. 736. That case is not pertinent, because it involved the legal right of a maternal uncle of certain minors residing in the city of New Orleans to receive appointment by the Oivil District Court as tutor for them and institute suit upon a policy of insurance against the defendant; and the court held that the appointee was without capacity to receive appointment or to stand in judgment for the minors. But the court, while thus holding, did not put its opinion upon the ground taken by the defendants’ counsel in this case, as will appear from the following extract therefrom, viz.:
“ We have no concern with the propriety of or validity of plaintiff’s appointment as tutor of the minors, nor with his right and power in that capacity to take possession of and administer the estate of their deceased parent, whose heirs they are, in this State.”
“ Guyol was domiciled and died in Kentucky, and so far as appears he left no property, real or personal, in this State. This policy of insurance is a mere non-negotiable evidence of a debt due by a New York debtor to a Kentucky creditor. The appointment by the insurance company of an agent in this State, through whom it may be sued, does not change the domicile of the company. Under no possible view can such a debt be said to have a situs, real or fieti-. tious, in this State.”
Applying to this, the principle announced in that case, the plaintiff had an undoubted right to take possession of the notes of Wooten, as the property of Weems, deceased, because they had been deposited in a bank of this city by Weems, for his personal account during his lifetime, and they there remained until delivered to the plaintiff as his executor.
*1268 The ten notes aggregated six thousand dollars in capital alone; and it is not pretended that he owned anything else of value at the time of his death. It is not claimed that Weems had at his death either heir or creditors.
The law declares that the place of the opening of a succession is fixed as follows, viz.:
1. “In the parish where the deceased resided, if he had a fixed domicile or residence in this State.
2. “ In the parish where the deceased owned inmovable property, if he had neither domicile nor residence in this State, or in the parish in which it appears by the inventory his principal effects are, if he have his effects in different parishes.
3. “ In the parish in which the deceased died, if he had no fixed residence, nor any immovable effects within this State at the time of his death.” Revised Civil Code, p. 935.
An examination of the evidence plainly shows, that Alexander Weems had, at the time of his death, “ no fixed domicile or residence in this State.” That he owned no immovable property in this State; and that the parish of Orleans is shown by the inventory, as well as by the parol proof, to have been the place where the notes given for his immovable property were situated, and which constituted “ his principal effects.”
It further shows that he did not die in this State, though he had made the city of New Orleans his abiding place previous to his departure from the State, and subsequent death.
On this showing with regard to the law, as well as to the evidence, it certainly can not be affirmed that the plaintiff’s appointment was an absolute nullity; for the law provides that “no testament can have effect unless it has been presented to the judge of the parish in which the succession is opened,” etc. R. C. C. 1644.
II.
On the second proposition the contention of the defendant’s counsel seems to be directed at the impossibility of Weems having accepted the stipulations of a deed which he never saw after same was executed; while, on the contrary, the opinion deals with Weems’ previous knowledge of the transactions which led up to the sale, with the terms of which he was fully acquainted; and more particularly with the three months’ extension of Wooten’s second *1269 note, then overdue, upon the faith of which the transaction was based.
In counsel’s brief it is admitted that Weems left Louisiana in May or June, 1892; and died on the 18th of March, 1893 — never having returned to this State in the meanwhile.
It is further admitted — and the deed itself shows the correctness of the statement — that the act was executed and recorded on the 12th of January, 1893, two months prior to the death of Weems.
It is further admitted that Wooten died on the 30th of January, 1893, and the deed shows that he signed the same on the 12th of January previous.
It is shown by the record that prior to his departure from the State Weems executed a power of attorney in favor of Mr. J. C. Gilmore, authorizing him to attend to his business during his absence, and directing the cashier of the Hibernia National Bank to surrender to him the notes of Wooten then in the bank “should the first one, falling due August, 1892, not be paid at maturity.”
Mr. Gilmore states as a witness that at its maturity, on the 21st of August, 1891, Wooten requested of Weems an extension of his first note, and that same was granted, and the note was subsequently paid. He says that when the second note fell due he again applied for an extension. That “ he (Wooten) concluded to sellout the island, and Bres and Richardson, who were friends of his, offered to buy the island, if some short extension could be obtained on the note. Mr. Weems was willing, as these letters (exhibiting them) which I offer will show, to grant an extension, and they made the purchase from Mr. Wooten of the island and recorded the deed, assuming Wooten’s obligations under the mortgage and these unpaid notes,” etc.
The correspondence in the record shows that on the 28th of November, 1892, Weems wrote a letter to Gilmore, stating that he had received a letter from Wooten requesting a ninety-day extension on his second note, then past due, and that he had replied requesting him to call on Gilmore, “ as he had charge of his interest ” in Louisiana.
That on the 16th of December, 1892, Wooten wrote to Weems stating that he was temporarily embarrassed and unable to meet the payment of his note then past due, but that he “ had found a purchaser in Mr. J. G. Richardson and J. R. Bres, New Orleans, provided he (Weems) will extend the time of the payment of the note now past due by (him) ninety days from the 1st of December, 1892.”
*1270 He further states that he therewith enclosed an obligation from them to that effect; and he requests him (Weems) to send same back to “his attorney, Mr. Gilmore,” stating that they (Richardson and Bres) “will satisfy him as to his (Weems) interest in the matter,” and that they will assume payment of all notes held by (Gilmore) against the property.”
The enclosure is of the following tenor, viz.:
“ December 16, 1892.
“ W. L. Wooten, Esq., New Orleans, La.:
“ Dear Sir — We will take your half of the Shell Island or Weems’ island at the price offered, provided you secure the extension from Mr. Weems of the note now past due for the term of ninety days from December 1, 1892.
(Signed)
“Jas. G. Richardson.
“ Jos. R. Bres.”
Replying to the foregoing under date December 20, 1892, he (Weems) wrote to Mr. Gilmore as follows, viz. :
“ Yesterday afternoon I received the enclosed communication from Mr. Wooten; it will speak for itself. I addressed a letter to Mr. Wooten on the same day I last wrote you, requesting that he give me a full statement as to his expectations and ability to meet his note then due and the within is his reply. I will reply by the same mail as this, that I have placed the entire matter in your hands and will be satisfied with any agreement entered into by you as my attorney and counsel I shall have no objection to granting a further extension on the note if it does not lessen my security in the future * * * I leave the matter with you,” etc. (Our italics.)
Mr. Gilmore further states that “ acting under the instructions of Mr. Weems” he called upon Mr. Richardson just after the death of Mr. Wooten, which took place on the 30th of January, 1893, in response to a call which Mr. Richardson had previously made upon him, referring to an envelope that had been left on his table during his absence.
Being asked the date of this interview he said: “ I could not fix the date, but it was in the course of the negotiations.
“ An extension had been granted on the second note by Mr. Weems, and Richardson and Bres had signed these papers.”
In speaking of the second extension on the condition that they *1271 (Bres and Rifchardson) would assume the payment of the series, he says:
“ Hearing from Mr. Weems that he was willing, I called upon Mr. Richardson and said that the extension is granted; but, I said to him, I see that Mr. Wooten is dead, by the papers. I then said, now he could pass no transfer; and he said, Oh, yes; we have passed a transfer before he went to the country, and it has been sent over and recorded.’ ”
Mr. Gilmore then said: “ Weems was satisfied with the condition, and seeing that Woofew was dead he was better satisfied than ever. * * The conditions of the letter of Richardson and Bres that this extension would be allowed was granted, and Richardson said that they had executed the deed before he (Wooten) left the city.”
On being interrogated as a witness, Mr. J. G. Richardson supplemented the statement of Mr. Gilmore, and- filled a gap in the testimony which he had left open, as-will appear from following, viz.:
Q. “I wish you to state that conversation between Mr. Gilmore, as agent for Mr. Weems, and yourself and Mr. Bres, in regard to matters that you have heard Mr. Gilmore testify to.”
A. “ Mr. Gilmore called at the office in answer to that letter that is there from Mr. Weems, giving an extension of time of ninety days on that note then past due; and he called, and Mr. Wooten was present, and he stated that it was all right — the extension,” etc. * *
Q. “ Was anything said by Mr. Gilmore to you when reference was made to the making of this sale by Wooten to yourself, with regard to having a notarial act passed?”
A. “Yes; when he first called he said that whenever we got ready to come over to his office that there was a notary there, and we could prepare the deed, which I did not do. When we got ready to make the deed I wrote it myself.”
Intermediately, between the conversation which was related by Mr. Richardson and that related by Mr. Gilmore, the deed was executed by Wooten and accepted by Richardson and Bres, and Wooten had died; but Weems was still alive, and Gilmore was his duly authorized and acting agent.
Richardson and Bres entered into possession of the property, and, subsequently, when the ninety days’ extension had expired, Mr. Richardson went to the bank and saw the date it would expire and on that day he paid the note.
*1272 The foregoing testimony was not quoted in our original opinion in extenso, but its substance only was stated. It furnishes full and complete proof that Wooten obtained a ninety days’ extension of his second note, at the time past due, on the express condition that Richardson and Bres should purchase the mortgaged property and assume the payment of Wooten’s nine notes — the one extended amongst the number. That Richardson and Bres executed an obligation to that effect, and it was forwarded to Weems, on the faith of which he granted the extension. That notice of this extension was subsequently given to Richardson and Bres, in the presence of Wooten, by Mr. Gilmore, as the agent of Weems. That immediately after that interview Richardson prepared the deed and it was signed by himself, Bres and Wooten and recorded. That subsequently it was discussed by Richardson and Gilmore; and when the extension had expired the former paid the extended note. The personal liability of the defendants is clearly established beyond the peradventure of a doubt; for Mr. Weems was living at the time of these transactions and Mr. Gilmore was both his agent and attorney.
Not only does the proof show Weems’ previous knowledge of the transactions which led up to the assumption of Bres and Richardson, but his possession of the written obligation to that effect. It shows that not only did Weems specifically agree to grant the extension to Wooten upon the faith of Richardson and Bres’ personal obligation, but due notification of Weems’ acceptance of their proposal was given by Weems to Wooten in writing, and to his agent, Gilmore; and same was personally communicated by Mr. Gilmore to Bres and Richardson in the presence of Wooten.
It shows that with full knowledge of these facts, and with direct reference to them, Mr. Richardson wrote the act of sale, which Wooten signed and he and Bres accepted; and that his action, in this respect, was subsequently approved by Mr. Gilmore, as agent, during an interview between Gilmore and Richardson.
. All these transactions occurred during the lifetime of Weems; and subsequently Richardson paid the extended note.
But there is another view of this case that is perfectly conclusive, as to the right of the plaintiff to recover, and it is that'the proof disclosing that the defendants had accepted Wooten’s proposition, and had actually purchased che mortgaged property and assumed the payment of his notes, it was within the power and competency of either *1273 Weems personally or of his agent, attorney or executor to accept said assumption and enforce the same, so long as same remained unrevoked, or not annulled by the defendants — conceding for the argument that the proof is not complete of his previous acceptance of the stipulation pour autrui defendants had made in his favor. And such subsequent acceptance is fully evidenced by this suit.
Our conclusion is that, in any view that can be taken of this case, the judgment should remain undisturbed.
Rehearing refused.