ANDREW GIBSON *et al. v.* WM. E. JONES, Adm'r, *et al.*

1. PRINCIPAL AND SURETY. The right of action accrues to a surety when the debt is paid by the surety.

2. REAL ASSETS. *Purchaser from devisee.* A purchaser from an heir or devisee, must in order to avoid liability for the ancestor's debts; be able to show that the alienation was *bona fide*, which could not be the case, if he purchased with notice of debts due by the ancestor, that might be made a charge against the lands in the hands of the heir by any proceeding known to our law. Code construed, sections 1762, 1764, 2253 and 2256.

---

FROM SULLIVAN.

---

Appeal from the Chancery Court at Blountville. H. C. SMITH, Ch.

C. J. ST. JOHN and THOMAS CURTIN for complainants.

C. R. VANCE for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill is filed, December, 1882, by complainants as creditors of David Hull, to subject a tract of land

devised by him to his wife for life, remainder to his children therein named, except one, Lucretia.

The facts necessary to be stated are, David Hull died in 1870, his wife, who had the life estate, in 1879. At March term, 1879, after the death of the wife, defendant, W. E. Jones, was appointed administrator *de bonis non* with the will annexed, there having been a previous administration, we take it, soon after his death. Hull left the fract of land of 160 acres, subject to the disposition of his will.

Adeline Hull, who had been a ward of Hull's, brought suit in the chancery court against the estate of Hull and his sureties, on guardian bond to recover monies in his hands as guardian and not accounted for. This case was successfully prosecuted, so that a decree was rendered against complainants in the present case as sureties for $844.36, by this court November, 1882. The estate of Hull, however, was held not liable, the defense of seven years having been interposed as a bar to the recovery sought. The sureties have paid this debt, and now file this bill against the devisees of the realty to subject the same to the payment of their debt, by way of reimbursement. It is shown there are no personal assets, and the devisees are made parties, together with the administrator Jones. He, in fact, is only made defendant by the terms of the bill in his character of administrator *de bonis non*, in order to have judgment ascertaining the amount of the debt against Hull's estate, and in order to enjoin a proceeding instituted by him, it seems, for the sale of the land, or his doing so

privately, as it is suggested he will do, in violation or without authority under the will.

Jones, however, answers the bill individually, and claims to have purchased the shares of three of the children of Hull, and that for this, with the reasons given in addition, the shares thus purchased by him, before suit commenced by complainants, these shares are not subject to complainants' claim. The chancellor has so decreed, and complainants have appealed. It is proper to say, that the other devisees, or those representing the other four shares made no defense, and the case is not before us as to them.

The Referees report against this decree, and recommend a reversal, to which respondent, Jones, files exceptions.

Several questions are presented by the exceptions, which are disposed of summarily together, as there is nothing in them to aid respondent. It is assumed in the answer that the claim of complainant rests on the doctrine of subrogation, and these sureties who have paid the debt due Adeline Hull from their guardian, are to be subrogated to the rights of Adeline. This is a mistaken view of the claim. Their claim is simply the ordinary claim of sureties, who have been compelled to pay the debt of their principal, and stands in this record alone on the ground of money paid for another, which he ought to have paid, and therefore a right to be reimbursed the sum paid. This being so, the statute of limitations having run in favor of the estate as against the claim of Adeline Hull, and the former adjudication to that

Gibson *v*. Jones.

effect, as well as the other defenses urged, that might or should have been made to her claim by complainants, have nothing to do with their rights in the present case.

This suit is brought on the new right of action which accrued on payment of the money decreed against the sureties, and was brought a short time after the right of action arose, and that no statute of limitation runs, until a right of action accrues, is now axiomatic in our law. It suffices to say, that there is nothing in any of these questions.

The plea of former adjudication of the claim in that case is equally unfounded, as these complainants had no claim at that time to assert, asserted none, and their claim could not have been adjudicated in any way in that case, because not then accrued.

The only exception that does tend to raise a matter that might be tenable or present a question to us for decision favorable to respondent is the second one, which is because the Referees report that the three interests purchased by William E. Jones, as set out in his answer in his own right was liable to complainants' demands, and reversing the chancellor's decree holding them not liable. This exception, taken alone, is not a compliance with the statute creating the commission, section 6, requiring "specfic exceptions to the report, pointing out definitely the error or errors complained of, and accompanying these must be a brief, citing the testimony," etc.

This exception is to the conclusion reached or announced, and puts in issue the entire record, no

specific reference being given to any part of it. Taken, however, in connection with the first exception, it may by a liberal construction, be held to raise the question, whether a purchaser from an heir or devisee, *bona fide* before suit brought or process issued, with no notice of any claim which could be a charge on the land, gets a good title as against creditors of the testator or intestate.

The first exception is based in the first part of it, on the effect of the statute of limitations having run against the claim of Adeline Hull. against the estate before purchased by defendant, and then adds, "before any lien or right had obtained against the same in favor of Adeline Hull or the complainants," he purchased the three interests for valuable considerations.

Giving this exception a liberal construction, it may raise the much mooted question in our State of the right of the heir or devisee to sell, and makes him liable only for the ancestor's debts to the value of the lands aliened: Code, sec. 2256 (old Code), new, 3094.

But that this question was not intended to be raised by the exception is shown by the fact, that in brief and argument filed in support of the exception there is no allusion to it, nor any reference to the section of the Code or our decisions upon it. On the contrary, the argument aimed to the point, first, that the statute of limitation of seven years had barred the claim against the estate, and had been so adjudged in the former case; and second, that Jones had purchased without notice of the claim of Adeline Hull.

As a matter of fact, the weight of the proof is

against respondent on this question of notice of some
claim on the part of Adeline Hull, whether he had
knowledge of its precise character is not so certain
except that it grew out of the guardianship; and if
so, then the claim now asserted by complainants would
have been a necessary result of her assertion of that
claim, and so, as she has asserted it, he is charged
with notice of what has followed, and so the Referees
report. This being so, the real question on the
facts would be, whether a party who purchases from
an heir or devisee lands, descended or devised, with
notice of the fact that there exists a claim against
the estate, which may be made a charge on the land,
if personalty is not sufficient to meet it, can hold
said land free from the debt, by reason of the title
conveyed to him by the heir or devisee, and compel
the creditor to go alone on the heir or devisee for
the value of lands descended or devised.

There has been found much difficulty in settling
the question in this State, or rather in the construction
of our statutes on this subject.

We have in our Code, article 11, section 2252,
title, "Real Assets," the general provision, taken from
5 George II., chapter 7, section 8, that "every
debtor's property, except such as may be specially
exempt by law, is assets for the satisfaction of all his
just debts." Then follows the act of 1879, chapter
39, in four sections, 2253: "Where administration is
granted to any person on account of his being a
creditor of the intestate, and there are not personal
assets sufficient to satisfy *the* debt or demand of such

*administrator*, he may prefer against the heirs or devisees of the deceased for the recovery of his debt, or demand, to the circuit court of the county, or chancery court of the district in which the administrator was granted a petition, setting forth the nature of the demand, and the amount of it, praying that the heir or heirs may be made defendants thereto.

Section 2254: "Upon *this* petition being filed in the clerk's office, the same proceedings shall be had, and the defendants shall be bound by and subject to the same rules as in other cases in equity."

Section 2255: "If a decree made against such heir or heirs, or any of them, execution shall be issued against the real estate of deceased debtor in possession of the heir or heirs against whom the decree is given." Then follows the provision of section 2256: "If an *heir* or devisee has aliened the land before suit brought or process sued out, he shall be answerable for the ancestor's debts, to the value of the land aliened."

These provisions apply only by their language and fair construction, down to the last section, to the particular case provided for, that is of an administrator who is a creditor. In strictness, perhaps, the last section would only apply to the same case, but may be construed as applying what was understood to be the general law of the State on the subject to this particular proceeding in favor of the creditor. We think the latter view the true one.

By section 1762, under title "Void Contracts," it is provided in substance, that all devises contrived to

defraud creditors of their just debts shall be void. It is then provided, section 1763, " such creditor may have and maintain his action against such devisee, and severally and jointly against him and the heirs at law of the debtor, in all cases, and in like manner, as such action can be brought or *maintained* against the *debtor's* heirs at law;" and then section 1764, " if the devisee sell, alien or make over the lands so devised, before action brought or process sued out against him, he shall be answerable for such debt to the value of the lands so by him sold, aliened or made over; and execution shall be taken out upon the judgment or decree obtained against him to the value of the said lands, as if the decree were his own proper debt. But lands, tenements and hereditaments, *bona fide* aliened before the action brought shall not be liable to such execution."

It is noticeable in these provisions, from 1762 to 1764 inclusive, that they are directed specifically to the case of a fraudulent devise of lands, as section 2253, and following are to the case of an administering creditor; yet it is incidentally provided, section 1763, " the creditor may proceed against the devisee, and jointly with him, the heirs at law, in the same manner as such suit could have been maintained against the debtor's heirs," thus assuming it was a matter of course against the heir. It is seen that where the proceeding is against the devisee the execution is taken out against him, as if the debts were his own, in case of alienation. It is then provided: "But lands, tenements and hereditaments, *bona fide,* aliened before

the action brought, shall not be liable to such execution.

This is for the protection of the purchaser, and when the lands purchased are sought to be reached for the debt of the ancestor, he must, in order to avoid the liability, be able to show that the alienation was *bona fide*, which could not be the case, if he purchased with notice of debts due by the ancestor, that might be made a charge against the lands in the hands of the heir by any proceeding known to our law.

It is true the language is, not "liable to such execution," but this must be held to include any legal proceeding intended to effectuate the creditor's right. Under our new liberalized system of remedies, giving the chancery court jurisdiction in the matters of debt, the present proceeding is a very proper one, treating it, as we have done, as against the purchaser, by reason of the complainant accepting his answer, and thus making him a party. All the rights and equities can be disposed of in the suit, saving costs and litigation.

The conclusion we have reached meets the main argument against the right of the heir or devisee. to alien lands descended or devised, that they could sell at once to any one, being insolvent themselves, and thus get the money for the land, by a fraudulent disposition of it, and the creditor's claim on real assets be defeated. Such alienation under the principle herein announced must be *bona fide*, that is, without notice of debts, and if such notice exists, or can be

reasonably made out, then the purchaser will hold the land subject to such debts.

The result is, that the report of the Referees is approved, and chancellor's decree reversed with costs ·of this court.