Neilson *v.* Weber.

NEILSON *v.* WEBER.

(*Jackson.*    May  18,  1901.)

1. ADMINISTRATION.  *Decedent's land sold by heir not liable for debts.*

The sale by an heir of inherited lands to a *bona fide* purchaser
for value, who has paid for same in full before receiving notice
of any indebtedness of the ancestor's estate, for payment of
which the lands might have been sold, places the lands beyond
the reach of creditors of the estate, and substitutes the per-
sonal liability of the heir for the lands.  (*Post, pp. 163, 164.*)

Code construed: § 3989 (S); § 3094 (M. & V.); § 2256 (T. & S.).

Cases cited and approved: Livingston *v.* Noe, 1 Lea, 65; Smith *v.*
Thomas, 14 Lea, 325; Maxwell *v.* Smith, 86 Tenn., 540; Raht *v.*
Meek, 89 Tenn., 276.

2. SAME.  *Same.  Burden of proof.*

But the burden is upon the purchaser, in such case, to show that
he made the purchase from the heir *bona fide*, and without no-
tice of indebtedness of the ancestor's estate, which might have
been made a charge against the lands.  (*Post, p. 164.*)

Cases cited and approved: Gibson *v.* Jones, 13 Lea, 692; Raht *v.*
Meek, 89 Tenn., 276.

3. SAME.  *Notice of debts to purchaser from heir insufficient, when.*

Suggestion of insolvency made on the day after administration,
which had not been followed up by any subsequent step, when
the heir sold his interest in the lands of the estate, fifteen
months later, does not affect the purchaser from the heir with
constructive notice of indebtedness of the estate for which the
lands might be held liable.  (*Post, p. 165.*)

4. SAME.  *Same.*

The purchaser of lands from the heir, if otherwise innocent,
will not be affected by the fact that his attorney knew of the
indebtedness of the estate, especially where it does not appear
23 P—11

that the attorney had this knowledge at the date of the purchase, or that he acquired it in the course of his employment. (*Post, p. 165.*)

FROM SHELBY.

Appeal from Probate Court of Shelby County. J. S. GALLOWAY, J.

EDGINGTON & EDGINGTON for Neilson.

W. W. GOODWIN for Weber.

WILKES, J.　This is a bill to have the rights of parties declared, and to sell land for partition.　The land originally belonged to Wilhelmina Weber, who died March 18, 1896, intestate, leaving as her heirs three children, Rudolph Erlick, Adolph Weber, and Emma Heiss.　Her personal estate was insolvent. Adolph Weber was appointed Administrator on March 26, 1896, and on the next day suggested the insolvency of the estate.　He took no further steps in the administration until July 2, 1897, when he filed a statement of the assets and liabilities of the estate, and on December 22nd he filed a supplemental statement and report.　The first statement is not in the record, and we do not know what it contained, and the second only shows that the Administrator had sold the personal assets of the estate for $20.00, and that was all there was of the per-

sonalty. In the meantime, and on the fourth of June, 1897, before the first report was filed, Rudolph Erlick sold his interest in the real estate to complainant, Christine Neilson, for $225.00, as shown by the deed made to him on that date, the same being a deed with covenants of warranty and against encumbrances.

Neilson testifies that he was told by Erlick that his mother's estate was not indebted, and that there was no encumbrance on the land. He states that his attorney told him that Adolph Weber pretended to put up some false claims, and, upon further examination, that this latter information came to him after he had bought this interest. It appears that these claims were disallowed, as well as some others, and that the valid claims allowed against the estate amounted to $244.71

A bill to sell the lands to pay debts was filed July 12, 1898, or more than a year after Neilson bought the interest of Rudolph Erlick and paid him for it, and more than two years after the estate had been suggested to be insolvent.

The insistence is that under the statute, Shannon, § 3989, the title of complainant is good, and that the interest sold to him cannot, under the facts recited in the record, be subjected to the debts of the estate, and that he occupies the status of an innocent purchaser. The statute referred to is in these words: "If an heir or devisee alien the land before action brought or process sued out, he shall

be answerable for the ancestor's debts to the value of the lands aliened."

Under this statute it has been held that the heir or devisee is so far owner that he is entitled to the rents and profits until the land is sold to pay the ancestor's debts, and if, before any proceeding for that purpose is instituted, he sells the same to a *bona fide* purchaser, such purchaser gets a good title, and the creditor's remedy is against the heir or devisee, who is answerable for his proportionate share of such of the ancestor's indebtedness as the personalty was insufficient to pay to the value of the land so aliened. *Livingston* v. *Noe*, 1 Lea, 65; *Smith* v. *Thomas*, 14 Lea, 325; *Maxwell* v. *Smith*, 2 Pick., 540; *Raht* v. *Meek*, 5 Pick., 540. But the burden in such case is on the purchaser to show that his purchase was *bona fide*, which could not be the case if he purchased with notice of debts due from the ancestor that might be made a charge against the lands in the hands of the heir or devisee by any proceeding known to our law. *Gibson* v. *Jones*, 13 Lea, 692; *Raht* v. *Meek*, 5 Pick., 276.

In the present case the testimony of the purchaser is that he knew nothing of any debts against the estate when he bought, and was assured by his vendor, one of the heirs, that there were no such debts. There is really no evidence to the contrary. While there may appear to be a little contradiction in the answer and deposition of Neilson, it is more apparent than real, and a fair statement of his evi-

Neilson *v.* Weber.

dence and contention is, that at the time he bought, he had no notice of any debts against the estate, but learned of claims being made afterwards, that were never sustained. It is true that .there ·was a suggestion of insolvency made in the County Court on the day after the administration was taken out, but it was not followed up by any proceedings to subject lands, nor was there, in fact, any statement of assets, or liabilities, until after Neilson had made his purchase. It is not shown that Neilson had any actual notice of this suggestion, and if it be held that he had constructive notice, still the fact remained that the suggestion of insolvency was not followed by any. other steps or proceedings for fifteen months thereafter, and the suggestion of insolvency, in a large number of cases, is merely a precautionary measure.

It is said that Neilson is affected with notice by the fact that his attorney knew of debts against the estate, but this position is not tenable, for two reasons. In the first place it is not shown that the attorney had the notice at the time of Neilson's purchase, and, besides, a client is not affected with notice, because his attorney may know facts which he has obtained from outside sources, and not in the matter and course of his employment for such client. *Kirklin* v. *Atlas Sav. Asso.*, 60 S. W., 149.

There is no error in the decree of the Court below, and it is affirmed, with costs.