COFFEY *et al. v.* MCEWEN.

(*Nashville*, December Term, 1947.)

Opinion filed May 3, 1948.

J. SHELBY COFFEY, of Columbia, and JAMES O. BASS and CHARLES C. TRABUE, JR., both of Nashville, for Coffey, Jr.

W. J. HARBISON and T. B. FORGEY, both of Columbia, for McEwen, administrator.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The bill in this cause was filed as a general creditor's bill upon a deficiency claim of $304.06. The claim was the balance due on a note, secured by real estate, after the trust deed had been foreclosed, and the sales price less expenses credited to the note.

The Chancellor and the Court of Appeals held that the estate of the maker of the note was liable and that the

purchasers of other realty of the estate were secondarily liable. The case is here on *certiorari* with only one question presented: Is the purchaser of realty, belonging to an insolvent estate, secondarily liable to a creditor of the estate when he had paid the executor of the estate for the realty?

The opinion of the Court of Appeals fully and fairly states the pertinent facts thus:

"The facts material to a determination of the questions made by the assignments of error are: John G. Hickman and Ben T. Hickman were brothers. On December 30, 1919, they each owned a one-half undivided interest as tenants in common in a tract of land in Maury County consisting of 68.58 acres. They jointly borrowed $2,500.-00 from the Federal Land Bank of Louisville, Kentucky, and gave a deed of trust on the 68.58 acres of land to secure the loan.

"John G. Hickman died in 1934 intestate, leaving heirs at law (children) who inherited his real property. Ben T. Hickman was never married.

"Ben T. Hickman borrowed $8,000.00 from Carl Gilbreath on July 29, 1940, and gave a deed of trust on his interest in land lying in Maury County to secure this loan. He and the heirs at law of John G. Hickman executed a deed of trust, or second mortgage, on the tract of land of 68.58 acres as a part of the security for the loan of $8,000.00. Ben T. Hickman died March 17, 1941, testate. By his will, all of his property was left to his sister, Mable Hickman. J. Shelby Coffey, Jr., qualified as Executor of the will of Ben T. Hickman. The estate was insolvent technically and actually.

"In order to provide funds to pay debts against the estate, Mable Hickman, the sole devisee of Ben T. Hickman,

and the heirs at law of John G. Hickman as owners of the tract of land of 68.58 acres, sold their equity in this land to Carl Gilbreath and wife, Mary H. Gilbreath, by deed dated August 30, 1941. The deed showed on its face that it was executed in order to raise money to pay debts of the estate of Ben T. Hickman. The heirs at law of John G. Hickman joined in this deed as owners of one-half of the land because they were personally liable on debts of Ben T. Hickman in an amount which was greater than the sale price of the land. The sale was private and no application was made to the County Court to ratify it.

"The money realized from this sale was $1,250.00, one-half of which belonged to the heirs of John G. Hickman and one-half to the estate of Ben T. Hickman. The entire $1,250.00 was used to pay debts of the estate of Ben T. Hickman upon which the heirs of John G. Hickman were, also, liable.

"The price which was paid by Carl Gilbreath and wife for this tract of land of 68.58 acres was fair and reasonable and the full value thereof."

The conclusion of the Court of Appeals on the question here presented is as follows:

"Purchasers of land belonging to an insolvent estate from the heirs or devisees of the decedent with notice of unpaid debts against the estate are personally liable to the creditors of the estate to the extent of the purchase price of the land. *Neilson* v. *Weber, supra* [107 Tenn. 161, 64 S. W. 20]; *Raht* v. *Meek*, 89 Tenn. 274, 14 S. W. 777; *Smith* v. *Thomas, supra* [82 Tenn. 324]; *Gibson* v. *Jones*, 81 Tenn. 684; *Yager* v. *Turbeville*, 1 Tenn. Ch. A. 227.

"A private contract of sale of land by a personal representative may be ratified and the execution of the con-

tract of sale ordered by the County Court upon a petition therefor. Code, section 8196.8.

"But the personal representative made no such request of the County Court in this case. The sale of the decedent's interest in the 68.58 acres of land in this case was made by the sole devisee of Ben T. Hickman. Upon a finding that the land sold for its value, we think the Chancellor had the authority to refuse to set the sale aside but render a personal judgment against the sellers and the purchasers in favor of legal creditors of the insolvent estate to the extent of the purchase price."

It is very ably and forcibly argued here that: "The effect, therefore, of the Court's holding is to require the purchaser to see that the Executor used the funds to pay claims which had been properly filed—in other words, to see that he does what the law requires him to do. It places upon the purchaser the duty, which the law imposes upon the Executor, of passing upon the validity of claims."

The basis of this argument is that the consideration for the realty was paid to and received by the executor who disbursed it to certain creditors to the exclusion of the claim here in question. And further there was no showing or finding by either lower court that the purchaser either actually or constructively perpetrated any fraud on this creditor.

██ The underlying basis for the conclusion of the Court of Appeals and the cases cited in support of this conclusion is based on Code, section 8201, which provides: "If an heir or devisee alien the land before action brought or process sued out, he shall be answerable to any creditor of decedent for the ancestor's debts to the value of the lands aliened." It is under this Code section that lia-

bility is predicated against an heir or devisee who sells the lands of their deceased ancestor. It is well recognized that: "The purchaser from the heir will, as against the creditor of the intestate, acquire a good and indefeasible title provided he is a *bona fide* purchaser, but the burden is upon him when the creditor seeks to subject such land to show that his purchase was in good faith." *Raht* v. *Meek*, 89 Tenn. 274, 277, 14 S. W. 777, 778.

██ The petitioners here frankly say that they made this purchase from the heirs and devisee but that the money was paid to the Executor. Normally the purchaser who purchases land from an executor or trustee, and pays the money to them, is relieved of the duty to see to the proper application of the purchase money but if the purchase is made under such circumstances as to raise a reasonable suspicion as to its proper application then the purchaser is not relieved. One purchasing from an executor at arms length and in good faith gets a good title free from claims. In such an instance the executor who misapplied the funds would be liable along with his sureties.

██ In the instant case the purchaser, petitioner here, was a distant relative of the deceased insolvent land owner. He paid a fair price for the land and did much for the heirs of the deceased. He, though, clearly did all he could to see that their claims were paid out of this estate, and money he paid for this land, to the exclusion of the claim here sued on. The obnoxiousness of a deficiency claim, regardless of its legality, is apparently what caused the attitude of these debtors and the petitioners toward this creditor. It can at least be inferred on reading this record that he knew this claim was not paid

while others, relatives of the deceased, who were creditors were paid. Both the petitioner and the executor fail to negative this very strong inference. Under such circumstances we feel that the conclusion of the Court of Appeals is correct.